THE GENERAL COURT *reversed* the judgment.

The same decision in *Green's administrator vs. Couden's* administrator, in two cases, one on the original judgment, and the other on *fiat* on *sci. fa. Vide* 3 *Harr. and M'Hen.* 389, 408, and *contra,* where there had been a reference to arbitrators, and an award returned, upon which judgment was rendered—*Ib.* 388.

———⚭———

## GENERAL COURT, MAY TERM, 1799.

### WOOTTON's Executor *vs.* SPRIGG's Executor.

DEBT upon a *bond,* dated the 20th of November 1771. The original writ issued the 16th of February 1795. The defendant pleaded the *act of limitations;* craving oyer of the bond and of the original writ, and pleading, as in 2 *Harris's Entries* 435, the form noted to have been drawn by Mr. *Pinkney.* To which the plaintiff entered a *general demurrer.* Joinder, &c.

*Sprigg,* for the plaintiff.

*Key,* for the defendant.

THE GENERAL COURT overruled the demurrer, and gave judgment for the defendant.

———⚭———

## GENERAL COURT, MAY TERM, 1799.

### HOFFMAN *vs.* BOISNEUF.

ASSUMPSIT on a promissory note executed in the republic of France on the 5th of January 1793, by the defendant, for 27,405 livres, and payable on demand to *Antoine Roland Deheaulme,* and two others, and by them endorsed to the plaintiff. The general issue pleaded.

#### BILLS OF EXCEPTIONS.

1. The drawees of the note upon which this action was brought, and the defendant, were citizens of France at the time the note was drawn. On the 12th of June 1795, the defendant came to America. The drawees came to America in 1796. In 1790 the French government emitted *assignats,* which by law were a legal tender in payment of debts contracted in specie; they continued in circulation until 1796, and from the 9th of April until the 10th of October 1793, were a legal tender in discharge of all debts between subjects of that government, residing therein. The name of the plaintiff in this case is

only lent to the drawees. The note is a renewal of one dated in 1786, and was for a specie debt. The drawees on 26th of September 1792, constituted the defendant their attorney in fact, by regular letter of attorney, authorising him to pay over and place in the hands of French merchants all the money he owed to them, with directions to such merchants to lay the same out in merchandise the most suitable for the markets of the United States, and to insure the same, and to ship the same to different ports in the United States, there to be sold. The giving the note was no revocation of the letter of attorney. On the 24th of April 1793, the defendant wrote to C. and B. merchants at Nantz, to pay over all the money which they had in their hands belonging to him, into the hands of D. S. & Co. merchants at Paris, of which the defendant at the same time informed the drawees of the note. That D. S. & Co. received orders from the defendant to lay out the said money in merchandise the most suitable to the markets of the United States, to insure and ship the same to different ports in the United States, and this information was also given by the defendant to the drawees, and they were informed, that the money he owed them was included therein, to which they made no objection but seemed pleased therewith. That C. & B. did accordingly, on the 8th of June 1793, pay over into the hands of D. S. & Co. at Paris, the sum of 200,000 livres, of which 28,002 livres was on account of the note on which this suit is brought, and 28,606 livres on account of a debt due to the drawees from *P. Payen.* That the defendant did not, by any act of his, oblige himself to invest the money which he owed the drawees in merchandise, or to lodge the money in the hands of any merchant to be invested in merchandise for their use. That when he deposited the funds in the hands of D. S. & Co. he did not inform them that he deposited any part thereof for the use of the drawees; that he did not, at any time after the shipment of the said goods, or after depositing his funds as aforesaid, inform the drawees that he had deposited any funds on their account, or that they were interested at any time before the 24th of November 1797, although he had corresponded with them by letters until they left France in 1796; and although they lived in his family from November 1796, until the 24th of November 1797. That the drawees never expressed any idea that they were interested in the said shipment of goods, or made any inquiry concerning the result, although they inquired of him relative to another shipment of goods to the amount of 9,000 livres. in assignat funds, furnished by Mr. V. and shipped by D. S. & Co. at the same time the other shipment was made.

MAY 1799.

Hoffman
vs.
Boisneuf.

That when the drawees called on the defendant for payment, on the 24th of November 1797, they made no claim on account of the said shipment, but founded their demand upon the note; and that the defendant did not then allege that he had deposited the debt he owed them with D. S. & Co. or interested them in said shipment, nor did then offer to pay them what would be due to them on that principle, nor acknowledge their right to receive any payment from him by reason of said shipment; but insisted that even considered as his friends, they were obliged to wait, till by restoration of order in St. Domingo, he should be restored to his estates in that island, and then to be paid their debt out of the first crops which he should receive from those estates. The shipment made by D. S. & Co. was made under the sole direction and orders of the defendant, and to him alone they accounted for the proceeds, and he applied them to his own use. The funds deposited by the defendant were in assignats, and depreciated in value, and liable to depreciation, and the merchandise in which they were invested were not such as were calculated for the consumption of the markets of the U. S. to which the loss, if a loss was sustained on the said shipment, was owing. Evidence was offered by the defendant to prove that he informed the drawees, on the 24th of November 1797, when they called on him for payment, that they were interested in the shipments made by D. S. & Co. and that he had received no account of the proceeds of the said shipment, that when he did he would settle with them, &c. That he made a supposed statement of what he considered would be their proportion of the proceeds of the shipment, which he then offered to pay them, agreeing to correct any error that might appear when the account of D. S. & Co. should be received, which payment the drawees refused to receive. That the defendant never did receive from D. S. & Co. an account of the proceeds of the shipment until the 12th of June 1798.

The defendant, by his attorney, then prayed the opinion of the court, and their direction to the jury, that if they were satisfied that the defendant, on 24th of April 1793, with the consent of the drawees, directed C. & B. to pay over to D. S. & Co. French merchants, the amount of the money then due from him to the drawees, and that C. & B. did, in virtue of such direction, pay the same over to D. S. & Co. on the 8th of June 1793, and that D. S. & Co. had orders from the defendant to lay the said money out in merchandise the most suitable for the markets of the United States, and to insure the said merchandise, and ship the same to different ports in the United States; and it was agreed between the drawees, and

the defendant, that such purchase and shipment should be for and on account of the drawees, that then the note, upon which this suit is brought, is paid off and discharged, and that no action can be sustained thereon, even though the jury should be of opinion that the money so deposited in the hands of D. S. & Co. by C. & B. was in assignats, which were in a depreciated situation.

Chase, Ch. J. The court are of opinion, that the direction prayed by the defendant's counsel ought not to be given; and they refuse to give the same to the jury. The defendant excepted.

2. Further evidence was offered by the defendant, that on the 24th of April 1793, he wrote to C. & B. directing them to pay over to D. S. & Co. all his funds in their hands, and that D. S. & Co. were directed to invest such funds in merchandise, in the manner herein before stated; that the drawees were informed at the same time, that so much of the said funds as should be sufficient to satisfy the debt due by him to them, was by him thus ordered to be placed in the hands of D. S. & Co. was so to be placed there for the use and account of the drawees. Also that D. S. & Co. on the 6th of October 1793, shipped goods to America, consigned to different merchants in different ports of the United States, to the amount of 532,762 livres, in the name of B. J. of New-York, by whom the same was covered as neutral property, although in fact he had no interest therein; that of the goods aforesaid, to the amount of 285,762 livres, were purchased with the funds placed in the hands of D. S. & Co. by the defendant on the 8th of June 1793. That from the 1st of September 1792, to the 10th of October 1793, assignats were a legal tender in France in discharge of debts between subjects of that government. That after the 9th April 1793, a bare tender of assignats was a discharge, but before that time a bare tender in assignats did not discharge a debt.

The defendant prayed the opinion of the court, and their direction to the jury, that the notice of the letter and order aforesaid of the defendant to C. & B. and his information given to the drawees at that time as above stated, was legal and reasonable notice to them of his proceedings under the power of attorney aforesaid, and authorised him to charge them with so much of the shipment aforesaid, as would be equivalent to the debt stated in the note upon which this suit is brought, and would thereby extinguish the said note.

CHASE, Ch. J. The court refuse to give the direction prayed by the defendant.

3. The plaintiff offered evidence to prove, that the defendant had not given to the drawees any notice of the shipment made by D. S. & Co. or that they were interested therein, until the 24th of November 1797. The plaintiff then prayed the opinion of the court, and their direction to the jury, that the drawees were not bound by the said shipment made by D. S. & Co. and obliged to be interested therein, unless the funds, so by the defendant declared to D. S. & Co. to be deposited for their use, were deposited by the defendant with D. S. & Co. for the use of the drawees, or unless the defendant did inform the drawees, within a reasonable time, that he had shipped the said goods for their use; and further, that if the defendant did not inform them thereof within the year after they came from France, and resided in the defendant's family, as offered in evidence, in that case information or notice thereof was not given in a reasonable time.

CHASE, Ch. J. The court are of opinion, and so direct the jury, that the drawees were not bound by the shipment made by D. S. & Co. nor obliged to be interested therein, unless the funds were deposited by the defendant with D. S. & Co. for the use of the drawees, and so declared to be by the defendant to D. S. & Co. or unless the defendant did inform the drawees within a reasonable time, that he had shipped the said goods for their use; and that as the defendant did not inform the drawees thereof within a year after they came from France and resided in his family, notice or information thereof was not given to them in a reasonable time.

The defendant excepted.

4. In this case Richard Potts, esquire, was produced as a witness for the plaintiff; but was objected to by the defendant, on the ground of interest; and a witness was examined to prove the nature of his interest, who swore that the plaintiff informed her, the witness, that Mr. Potts was answerable to him for his claim which he had against the drawees in case he failed, or did not succeed in this suit; and the goods furnished by the plaintiff to the drawees, for which his claim arose, were so furnished to them on the credit of Mr. Potts, who put the note, on which this suit is brought, into his hands.

CHASE, Ch. J. The court, on the evidence given, refuse to permit Mr. Potts to be examined as a witness in this case.

5. In this case the court determined, that where a translation of any foreign language into English was offered in evidence, it must be a literal, and not a liberal translation; and if there were any ambiguous expressions, or phrases of equivocal meaning inserted in the writing, that there should be a translation made of the various meaning of such expressions, and phrases; and that the best way of ascertaining the meaning of the writer was by considering the precedent and subsequent words, and adopting that sense of the expressions which accorded with the meaning of the writer.

*Martin*, (Attorney General,) and *Shaaff*, for the plaintiff.

*Mason* and *Winchester*, for the defendant.

VERDICT and *judgment* for the plaintiff.

The defendant appealed to the Court of Appeals, and the judgment of the General Court was affirmed on both bills of exceptions at November term, 1802.

## COURT OF APPEALS, JUNE TERM, 1795.

### TUBMAN *vs.* ANDERSON.

APPEAL from a decree of the court of chancery, *dismissing the bill* of complaint of the appellant. The bill states, that *Edward Anderson*, (the appellee,) in the year 1782, purchased two lots of land of the state of *Maryland*, part of *Calverton Manor*, in Charles county, which had been confiscated. That in the same year the appellee contracted to sell the same to *Alexander Trueman*, for 3l. 15s. 0d. per acre, who accordingly gave bond to the appellee for the purchase money, viz. 750l. and he gave his bond to *Trueman* to convey the land to him in fee on the 23d of September 1785, and accordingly he was put into possession by the appellee, and in that year *Trueman* had paid all the purchase money but a small part. That the appellant in 1785 bought the land from *Trueman*, and bonds were mutually passed for the conveyance of the land to the appellant, and the payment of the money to *Trueman*, which has been paid except a small part. The bill further states, that the appellee, alleging that it would simplify the business by making the conveyance in the first instance *directly* to the appellant, prevailed on the appellant to take an assignment of the appellee's bond of conveyance to *Trueman*, and give up to *Trueman* the bond he had passed to the appellant. That the appellee agreed to take from the appellant the balance he owed to *Trueman*, and to look to *Trueman* for the residue, and promised to convey the premises directly to the appel-